CHAPMAN PRICE STEEL COMPANY *v.* BERTELS ET AL.

[No. 14,316. Filed July 1, 1931.]

*James L. Murray,* for appellant.
*James C. Mathews* and *White & Jones,* for appellees.

CURTIS, J.—This is an action brought before the Industrial Board of Indiana by Emelie Bertels, mother, and

Lizette Bertels, sister, of Raymond Bertels, appellees, against Chapman Price Steel Company, appellant, for compensation for the death of their son and brother, alleged to have been due to an accidental injury arising out of and in the course of his employment on June 12, 1928.

The full board, in its corrected award, made the following finding: "That, on June 12, 1928, one Raymond Bertels was in the employ of the defendant at an average weekly wage in excess of $30, and on said date the said deceased, by the terms of his employment, was working at a place that required the handling by him of heated sheets of metal with tongs and placing them in a rolling mill. The place where plaintiff and his co-employees were required to work was necessarily extremely warm and, on the day plaintiff was injured, the atmosphere was unusually warm. That on said date, while the plaintiff was engaged in the duties of his employment, he became suddenly exhausted and was seized with cramping of his limbs, which affected his entire body and he was compelled to cease work, was taken to the hospital and given medical aid, removed to his home and within a few hours died on June 13, 1928. The majority of the members of the full board find that plaintiff's said injury and death was the result of an accident arising out of and in the course of his said employment by the defendant. The said majority of the members further find that deceased, at the time of his said injury and death, was 26 years of age and lived with his mother, Emelie Bertels, and his sister, Lizette Bertels, aged sixteen years, to whom he contributed the sum of ten dollars per week for their care and support, each of whom relied upon said contribution and were partially dependent on the deceased for their support to the extent of said contribution."

Upon the above facts, the full board entered its award as follows: "It is therefore considered and ordered by a majority of the members of the full Industrial Board

that the plaintiffs, Emelie Bertels and Lizette Bertels, be, and they are hereby, awarded compensation as against the defendant at the rate of $5.50 per week in equal shares, for a period of 300 weeks, beginning on June 13, 1928. It is further ordered that the defendant pay the necessary medical, surgical and hospital bills, for the first thirty days after the date of the injury; the statutory $100 on the funeral expenses of the deceased Raymond Bertels, together with the costs of this proceeding. It is further ordered that the fee of plaintiff's attorney be fixed in accordance with the rule of the board, that is: 10% upon the first thousand dollars of recovery, 5% upon the second thousand, and 2½% upon all in excess thereof." From this award, the appellant appeals to this court and assigns as error the following: "The award of the full Industrial Board is contrary to law."

In addition to the facts found by the board, the evidence shows that the decedent went to work at 8 o'clock on the morning of June 12, 1928, in good health; that he had never suffered from heat or cramps before that day, although he had worked for seven years for appellant at the same occupation; that, about noon, he told the foreman that he was feeling bad; at 1:30 p. m., he had the commencement of cramps and could not hold the tongs; shortly afterward, he commenced to have convulsions, which so exercised his mind and body that it required six men to hold him until the hypodermic which was given him took effect.

The medical testimony throws some light upon this case, and we quote it as set out in appellant's brief. On direct examination, Dr. E. E. Cahal testified, in substance, as follows: "I am a physician located within six blocks of the Chapman Price Steel Company, a graduate of the Indiana University School of Medicine in the year 1914, and since that time have been practicing in Indianapolis except for one year when I was an interne

at the City Hospital; I was called to the Chapman Price Steel mill June 12, between 4 and 4:30, to see Raymond Bertels and found him in the office building with the assistant and three or four mill boys; the office of the steel company called me; when I arrived, Mr. Bertels was partially dressed, lying down on a cot; I examined him and found him suffering from severe pain in the abdomen and in the loin, perspiring freely, and suffering from what is known as 'mill cramps,' in terrible pain; I think it was necessary for someone to hold him; I was there about 30 or 35 minutes and gave him a half a grain of morphine and ordered him to the hospital; I had a history that he had been working in the steel plant and was attacked suddenly with severe cramps; I called to see him the next morning, but he was dead; I think the cause of death was dehydration, that is, his body was depleted of hydrogen and he had anemia by draining the body which came from overheating; this would cause a strain upon his heart; in the past five years, I recall two other cases in this particular mill, but I think both of them recovered."

On cross-examination Dr. Cahal testified substantially as follows: "I diagnosed the condition as the result of being overheated caused by being subjected to heat continuously and maybe over a considerable while; it is possible that it started on or about June 7, and it may take considerable time."

Dr. C. E. Farabee testified, in substance, as follows: "I have been practicing since the spring of 1880 and I am nearly 83 years old; I was the family physician for Bertels and was acquainted with Raymond; I saw him on June 13, 1928, about 4 or 4:30 in the morning; I asked him how he did it and he told me he had suffered cramps and the cramps were not so bad; I found him suffering from excessive heat, very weak and cramping to some extent, but not so bad as he had been, and such a con-

dition as I found could have resulted from being overheated; I was at the house the greater part of an hour and then I gave him a stimulant; his pulse was weak and I told them if they saw any change to let me know; his weak heart would indicate that if he did not get more strength he was not going to last very long; I saw him in bed at his home and left after I gave a heart stimulant after he began to revive; when I got there the second time, he was unconscious and he was unconscious when Dr. Cahal got there; we did not hold a *post mortem* and, in my opinion, his death was caused by exhaustion from heat." On cross-examination, Dr. Farabee testified that this condition of overheating is brought on by continuous subjection to excessive heat, and mostly there is exertion along with it.

This court is committed to the doctrine that the words "by accident arising out of and in the course of the employment," as used in the Indiana Workmen's Compensation Act (§9447 Burns 1926), should be liberally construed in harmony with the humane purposes of the act. *Haskell, etc., Car Co.* v. *Brown* (1917), 67 Ind. App. 178, 117 N. E. 555; *Indian Creek Coal, etc., Co.* v. *Calvert* (1918), 68 Ind. App. 474, 119 N. E. 519, 120 N. E. 709; *Townsend & Freeman Co.* v. *Taggart* (1924), 81 Ind. App. 610, 144 N. E. 506; *Stacey Brothers Gas Construction Co.* v. *Massey* (1931), *ante* 348, 175 N. E. 368.

The word "accident," as used in our Compensation Act, has been held to mean any mishap or untoward event not expected or designed. *Brewer* v. *Veedersburg Paver Co.* (1931), 177 N. E. (Ind. App.) 74. See, also, cases cited above. It seems clear, under the principles above announced, that the instant case falls easily within the foregoing definition, and that the evidence fully justifies the award of the full board and said award should be affirmed.

But appellant insists, however, that, even though the death of the decedent might be compensable, yet no award should have been made, for the reason that no dependency is shown. The evidence on dependency shows that the sister, Lizette, was 18 years old, and was going to school, had no income except the contributions of the decedent, who gave her between $7 and $8 per week for clothes, books, expenses and spending money; that he also paid $115 per year for taxes, approximately $80 per year for coal, $25 per month on the mortgage on the home and other sums in addition; that the mother was solely dependent upon her two sons, Ray (the decedent) and Roy; that Roy did not contribute anything except for his own board and lodging; that the mother was unable, without the decedent's help, to pay the monthly installments to the Building and Loan Association. We believe the award of the board of $5.50 per week for a period of 300 weeks to be equally divided between the mother and sister is amply supported by the evidence.

Award affirmed.